## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| **ELMER REED, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. _____** |
| **CONTRACTOR MANAGEMENT SERVICES, INC., and N&J EXPRESS, LLC,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

COMES NOW the Plaintiff, Elmer Reed ("Reed" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, and hereby files this Collective Action Complaint (the "Complaint") against Defendants Contractor Management Services, Inc. and N&J Express, LLC (collectively "Defendants") on behalf of all persons who entered into a Member Application and Agreement with CMS (the "CMS Agreement") and an Addendum (Independent Contractor Services) to that CMS Agreement with N&J Express, LLC (the "N&J Express Agreement"), and who drove or who currently drive a vehicle (weighing less than 10,000 pounds) over forty hours in

any work week for N&J Express, LLC as a courier route driver at any time during the relevant statutory period (the "Class"), showing the Court as follows:

## Parties

1.

Plaintiff Elmer Reed is a resident of Lee County, Georgia, and therefore resides within this judicial district.

2.

N&J Express, LLC ("N&J Express" or "Defendant") is a Georgia for-profit corporation that lists its principal office address with the Georgia Secretary of State as 234 Mayfield Drive, Leesburg, Georgia 31763, and is subject to service in Lee County upon its registered agent Spencer K. Hawkins, 234 Mayfield Drive, Leesburg, Georgia 31763.

3.

Contractor Management Services, Inc. ("CMS" or "Defendant") is a foreign for-profit corporation subject to service in upon its registered agent R. Glen Woods at 1349 Galleria Drive, Suite 200, Henderson, Nevada 89014.

## Nature of Action

4.

N&J Express is a privately held courier company in Georgia that provides,

among other courier services, same-day scheduled courier route delivery services primarily for or on behalf of larger courier companies who need additional drivers.

5.

N&J Express's ability to operate and its success as a company depends on the services provided by its drivers.

6.

This proceeding concerns N&J Express's misclassification of its drivers as independent contractors in order to avoid the obligations and costs imposed on employers by federal and state law.

7.

N&J Express's own website touts itself as benefitting from classifying its drivers as independent contractors, stating that "N&J Express' major clients are larger courier companies who need independent contractors to provide courier delivery services.  N&J Express allows those companies to eliminate the hassel (sic) of dealing with multiple Independent contract drivers and allows them to communicate their needs to N&J Express with the guarantee of satisfaction."  N&J Express's website also boasts that it "specializ[es] in Routed delivery services" and that "the company has experienced exponential growth."

8.

Despite the written classification of its drivers as independent contractors, N&J Express retains the right to control and actually does control all of the principal functions of its drivers' activities.

9.

N&J Express's drivers are, in economic reality, employees.  For example, Plaintiff and the Class are/were required to report at the distribution center at the same time every morning, follow the strict policies and procedures of N&J Express, work the schedule arranged by N&J Express, follow the exact route prescribed by N&J Express, qualify for and be covered under the insurance policy of N&J Express, and utilize equipment or special transporting materials provided by N&J Express or its customers.  Plaintiff and the Class are subject to discipline or termination if they violate any of N&J Express's policies, procedures, or rules.

**Relevant Background**

10.

The illegal practice of misclassifying employees as independent contractors is pervasive.  In 2000, the U.S. Department of Labor commissioned a study and

found that up to 30% of firms misclassify their employees as independent contractors.  *See* Lalith de Silva et al., *Independent Contractors: Prevalence and Implications for Unemployment Insurance Programs* i-iv, prepared for U.S. Department of Labor, Employment and Training Division by Planmatics, Inc.

11.

This case is a prime example of the illegal misclassification of workers as independent contractors pursuant to agreements designed to avoid overtime and other employee obligations.  During the time period relevant to this complaint, Defendants have maintained a uniform policy and practice of misclassifying Plaintiff and the Class as independent contractors instead of employees.

12.

As a result of Defendants' illegal scheme to misclassify N&J Express's drivers, Plaintiff and the Class are entitled to, *inter alia*: a) a declaration that they are employees; b) rescission of their contracts with CMS and N&J Express which are illegal and violate public policy and are therefore void; and c) damages based on Defendants' violations of federal and state law as set forth herein.

13.

Plaintiff and the Class seek injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to them under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the laws of the State of Georgia.

**<u>Jurisdiction and Venue</u>**

14.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 because they raise a question of federal law.  This Court also has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) (for Plaintiff's FLSA claim); 28 U.S.C. § 1337 (this action arising under Acts of Congress regulating commerce); and 28 U.S.C. §§ 2201 and 2002 (Plaintiff's claim for declaratory relief).

15.

This Court has supplemental jurisdiction over Plaintiff's Georgia common law claims pursuant to 28 U.S.C. § 1367.

16.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district, and all contracts at issue in this lawsuit were executed by Plaintiff within this judicial district.

**Parties**

17.

Plaintiff Elmer Reed resides in Lee County, Georgia and worked for N&J Express as a driver from June 17, 2008 through September 16, 2008, driving routes first from N&J Express's designated Tifton, Georgia location and then from N&J Express's designated Albany, Georgia location. As a term and condition of his employment, N&J Express required Mr. Reed to sign the CMS Agreement with CMS and an Addendum with N&J Express. Despite these agreements, N&J Express improperly, wrongfully, illegally classified Mr. Reed as an independent contractor, when the economic reality of his position is that of an employee, and N&J Express retained the right to control and, in fact, actually did control, his work. Mr. Reed routinely worked in excess of 40 hours per week, but as a result of his misclassification, N&J Express did not pay him overtime compensation as

required by federal wage laws.  N&J Express also improperly deducted various business-related costs and expenses from Mr. Reed's paychecks that would have been paid by N&J Express had he been properly classified as an employee of the company.

18.

Pursuant to 29 U.S.C. §216(b), Plaintiff Reed has consented in writing to being a Plaintiff in this action.   A copy of Mr. Reed's opt-in consent form is attached hereto as Exhibit 1.

19.

Defendant N&J Express is a Georgia for-profit corporation with its corporate headquarters located at 234 Mayfield Drive, Leesburg, Georgia 31763. N&J Express is a courier company operating within the State of Georgia. At all times relevant to this Complaint, N&J Express has been an enterprise engaged in interstate commerce within the meaning of the FLSA, and the employer of Plaintiff within the meaning of the federal and state laws which form the basis for this Complaint.

**Factual Allegations**

20.

As a condition of employment, N&J Express requires its drivers to sign lengthy form contracts and execute statements labeling them as "independent contractors." These contracts are designed to conceal the true nature of the relationship between N&J Express and its drivers – that of employer and employee.

21.

N&J Express pressures workers to sign these non-negotiable contracts.

22.

Specifically, in order to obtain his employment, N&J Express required Plaintiff to sign: a) the CMS Agreement with CMS; and b) the N&J Express Agreement with N&J Express (together the CMS Agreement and the N&J Express Agreement are referred to hereafter as the "Contracts").

23.

The N&J Express Agreement contains a provision stating that it shall be deemed to have been "drawn in accordance with the statutes and laws of the State

of [Georgia] and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state."  Therefore, according to N&J Express, Georgia law applies uniformly to Plaintiff and all Class members who have signed the N&J Express Agreement.  The N&J Express Agreement, as well as N&J Express policies and practices at issue, all originated in Georgia.

24.

CMS's website homepage (http://www.ictherightway.com) features a picture of a driver/courier and states that it is "the leading full-service consulting firm for companies utilizing Independent Contractors," and that it "specializes in the transportation industry, providing compliance, settlement processing and benefit solutions that deliver measurable advantages to both company owners and Independent Contractors."

25.

CMS's website, under the page marked "About Contractor Management Services," states:

> CMS provides an environment of secure protection to shield your company from the risks associated with independent contracting. Getting it "almost right" could cost you thousands of dollars.  The only way to handle Independent Contractors is "The Right Way." CMS is the only partner that goes the extra mile to ensure that your

business will reap the benefits of contracting without headaches and unnecessary costs.

26.

Upon information and belief, CMS was formed and designed for the purpose of conspiring with N&J Express and other courier companies to create an illegal scheme to permit those companies to misclassify their drivers as independent contractors in order to decrease company costs and deprive workers of their rights and benefits as employees, as well as to defraud federal and state governments of millions of dollars in unpaid taxes that companies following the law are require, and do, pay.

27.

Plaintiff was forced to sign the CMS Agreement as a term and condition of his employment with N&J Express.

28.

The CMS Agreement and the N&J Express Agreement are contracts of adhesion.

29.

The Contracts are written in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreements.

30.

The Contracts purport to create the legal fiction that N&J Express's drivers are independent contractors.

31.

The Contracts are standard form contracts, imposed on Plaintiff on a take-it-or-leave-it basis at the outset of their employment.

32.

Plaintiff has no bargaining power or opportunity to negotiate the terms of the Contracts.

33.

The Contracts flaunt federal and state law by including language that Defendants conspired to create, that falsely labels N&J Express drivers as independent contractors.

### N&J Express Retains the Right to Control the Work Performed by Plaintiff

34.

Despite using the label of "independent contractor," the terms of the N&J Express Agreement and other documents disseminated by N&J Express grant N&J Express the absolute right to control and direct its drivers, not only as to the results to be accomplished by the work, ***but also as to the details and means by which that result is accomplished, including the time, method and manner of performance.*** The N&J Express Agreement and other relevant documents all emanate from the Company's corporate headquarters in Georgia.

35.

The N&J Express Agreement imposes a number of rules and policies, which are in fact, terms and conditions of employment between N&J Express and its drivers.

36.

For example, despite stating that the drivers are "independent contractors" and that N&J Express has no authority to "supervise, control, direct or oversee the performance of Contractor's services," the N&J Express Agreement explicitly permits N&J Express to supervise, control, direct and oversee the drivers' performance by permitting N&J Express the right to discipline or terminate the drivers at will, as would an employer, based on the commission of a "major breach" or two or more "minor breaches."

37.

The N&J Express Agreement is structured to replicate the employer and employee relationship under the guise of an independent contractor relationship.

38.

Plaintiff is also subject to rules or policies of N&J Express that are not set forth in the Contracts and, at Defendants' whim, may be adopted in the future at any time.

39.

In fact, Defendants routinely impose new rules and policies that govern N&J Express's employment relationship with Plaintiff, including, just for example:

a.      Unilateral reduction of N&J Express's rate of pay to Plaintiff; and

b.      Vendor fuel surcharges.

40.

Plaintiff has no authority to refuse or negotiate Defendants' rules and policies; he must comply or risk discipline and/or termination.

**N&J Express Actually Controls the Work Performed by Plaintiff**

41.

In addition to reserving the right to control the work performed by its driers, N&J Express, in fact, does exercise control over the method and manner in which Plaintiff performs his labor and services for N&J Express. There is nothing "independent" about the actual job requirements imposed on Plaintiff.

42.

N&J Express instructs its drivers concerning how to do their work and dictates the details of the performance of their jobs.  For example:

a.   Plaintiff and the Class were required to wear a uniform bearing the name of the N&J customer that they were contracted to service, although Plaintiff was never provided one before the termination of his brief period of employment;

b.   Plaintiff and the Class have no authority to refuse assigned pick-ups or deliveries;

c.   Plaintiff and the Class must arrive at the same pick-up and drop-off locations at precise times;

d.   Plaintiff and the Class must follow the exact route prescribed to them by N&J management employees, in the exact sequence of deliveries prescribed by the directions in the manifest;

e.   Plaintiff and the Class are not permitted to make deliveries or pick-ups according to their own schedule;

f.   Plaintiff and the Class are not permitted to vary the schedules set by N&J Express;

g.   Plaintiff and the Class must provide daily reports of deliveries made;

h.   N&J Express employees assist the customer in coordinating and issuing the paperwork, delivery, and pick-up schedules for Plaintiff and the Class.  Plaintiff and the Class are required to strictly adhere to these schedules;

i.   N&J Express, not the Plaintiff and the Class, conducts all of the billing and invoicing to N&J Express's customers for the driver's work.  N&J Express bills the third-party customers directly, and Plaintiff has no control over whom to deliver packages to, what prices to charge, or what times to make such deliveries.  All negotiations over the cost of delivery are done directly between N&J Express and the third-party customer;

j.   If Plaintiff and the Class are not able to drive a route during a particular day, they must find a co-worker to cover their route who has been strictly pre-approved by N&J Express, has qualified for coverage under and is actually covered by N&J Express's insurance,

and has been through the same pre-employment vetting and qualification process set forth below;

k.      All drivers for N&J Express must complete a qualification process with N&J Express, which includes a detailed background check and drug screen.  N&J Express requires that all persons in contact with any of its customers, including any replacement driver, must go through the same qualification process;

l.      If Plaintiff or the Class fail to schedule a co-worker to cover their assigned route, N&J Express reserves the right to terminate Plaintiff or the Class;

m.      N&J Express requires Plaintiff and the Class, at their sole cost and expense, to maintain their vehicle in accordance with N&J Express's standards and to submit to N&J Express proof of timely maintenance and inspection of such vehicle, or to lease N&J Express's vehicle if their vehicle does not meet with N&J Express's requirements; and

n.      N&J Express management employees conduct "ride along" training to assign the exact routes and delivery schedules to be followed by the

route drivers, and Plaintiff and the Class are required to comply with the assignments provided during that "ride along" training.

43.

N&J Express has, through the guise of the N&J Express Agreement, shifted certain capital costs to Plaintiff and the Class while retaining total behavioral and financial control over them in the same way it would over any of its employees.

44.

The behavioral and financial control manifested by Defendants over Plaintiff and the Class further demonstrate that the workers are employees rather than independent contractors.

45.

Therefore, Plaintiff and the Class are employees and not independent contractors: a) under the federal IRS test for determining employee status; b) under the federal FLSA economic reality test; c) under the laws of the State of Georgia; and d) under the law of the Restatement of Agency (Second) §220(2).

## <u>Defendants' Financial Incentives to Misclassify Plaintiff</u>

46.

Defendants have intentionally misclassified Plaintiff to avoid N&J Express's obligations under state and federal tax laws, Social Security, state unemployment insurance laws, workers' compensation laws, and other employment laws.

47.

N&J Express also saves hundreds of thousands of dollars in avoiding expenses associated with its core business by deducting these amounts from the pay checks of Plaintiff.  N&J Express has determined that it can shift expenses that it would ordinarily have to pay its employees.

48.

For example, N&J Express deducts various charges and fees from the pay checks of Plaintiff, including, without limitation:

    a.    CMS processing fees;

    b.    Vehicle lease fees; and

    c.    Excess fuel charges.

49.

The sums deducted by N&J Express (or at the control of N&J Express) from the pay checks of Plaintiff and the Class is not for the benefit of the Plaintiff and the Class, but rather, is for the benefit of Defendants and N&J Express's business.

50.

Although Plaintiff and the Class frequently were required, permitted, or encouraged to work more than 40 hours per week, they did not receive one and one-half times their applicable regular rate for hours worked in excess of 40 hours per week, as required by the FLSA.

51.

N&J Express denied that Plaintiff was eligible for unemployment payments when he lost his job; however, the Georgia Department of Labor in a determination issued June 12, 2009 by an Employer Liability Adjudicator determined that an employer-employee relationship existed between Plaintiff and N&J Express.

52.

Also, because of the misclassification, Plaintiff was not covered by workers' compensation if he was injured on the job.

53.

Plaintiff was required to pay substantial sums of his own money for work-related expenses, including, without limitation, the purchase or lease of vehicles and costs for operating, insuring, and maintaining those vehicles, equipment required by N&J Express, and communication devices required by N&J Express.

54.

Defendants' denial of legal wages, overtime compensation, reimbursement of work expenses, and other benefits of employment to Plaintiff, as set forth herein, is and has been willful and deliberate.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

55.

This action is maintainable as an opt-in collective action pursuant to 29 U.S.C. § 216(b) as to Plaintiff's claims for unpaid wages, overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

56.

In addition to Plaintiff, numerous current and former route drivers for N&J Express are similarly situated to Plaintiff, and Plaintiff is acting on behalf of their interests as well as Plaintiff's own interests in bringing this action.   Upon information and belief, Plaintiff believes that N&J Express has employed between 25 and 100 similarly situated current and former drivers during the relevant time period.

57.

Plaintiff and the Class are similarly situated, as they have substantially similar job requirements and provisions and are subject to a common policy, practice, or plan by Defendants that requires or permits them to perform work for N&J Express which is not compensated under the FLSA.

58.

Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel competent and experienced in multiple party complex employment litigation and FLSA collective action litigation.

59.

The vehicles that Plaintiff and the Class were regularly and customarily assigned or pre-qualified to use to make N&J Express deliveries do not exceed 10,000 pounds.

60.

Defendants willfully violated the FLSA.  Defendants knew or should have known that their conduct was unlawful and/or showed reckless disregard for the rights of Plaintiff and the Class under the FLSA.

61.

Despite their knowledge that time spent by Plaintiff and the Class, as described above, was compensable time under the FLSA, Defendants have refused to fully compensate N&J Express's drivers for any of this overtime.

62.

The identity of the Class members is known to Defendants and is readily identifiable through N&J Express's records.  Similarly situated employees may be readily notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims under the FLSA.

## COUNT I

### <u>Declaratory Judgment Against All Defendants</u>

63.

Plaintiff incorporates by reference all preceding paragraphs.

64.

An actual controversy has arisen between Plaintiff and Defendants relating to whether N&J Express has illegally misclassified Plaintiff and the Class as independent contractors instead of employees, and have thus denied Plaintiff and the Class the common benefits of employee status, including, without limitation, overtime compensation and contributions to N&J Express's retirement plan.

65.

Plaintiff and the Class seek entry of a declaratory judgment in their favor which declares that N&J Express's practices as alleged herein are unlawful; that Plaintiff and the Class are employees and not independent contractors; and which provides for recovery of all sums determined by this Court to be owed to Plaintiff and the Class by Defendants.

## COUNT II

## Rescission of Contract Against CMS and Defendant N&J Express

66.

Plaintiff incorporates by reference all preceding paragraphs.

67.

The written contracts between CMS, N&J Express and Plaintiff and the Class are unconscionable and illegal contracts of adhesion, and should be held unenforceable in part or in whole under Georgia state law, as contrary to public interest, policy, and law.

68.

The CMS and N&J Express Agreement provides an unfair advantage to N&J Express by illegally mischaracterizing the status of Plaintiff and the Class, in that N&J Express attempts to illegally evade its employment related obligations through the contract.

69.

The N&J Express Agreement is void as against public policy as its sole purpose is to violate federal and state law, and is therefore unenforceable.

70.

For these reasons, Plaintiff and the Class are entitled to rescission of the N&J Express Agreement pursuant to Georgia law and restitution of the reasonable value of services rendered to N&J Express by Plaintiff and the Class.

## COUNT III
### Misclassification as Independent Contractors
### Against All Defendants

71.

Plaintiff incorporates by reference all preceding paragraphs.

72.

Defendants CMS and N&J Express have knowingly and willfully misclassified Plaintiff and the Class as independent contractors instead of employees, in violation of Georgia law (based on the N&J Express Agreement's choice of law provision and where N&J Express is headquartered).

## COUNT IV
### Fair Labor Standards Act Against All Defendants

73.

Plaintiff incorporates by reference all preceding paragraphs.

74.

Defendants violated the FLSA by knowingly failing to maintain records of all hours worked by N&J Express drivers, including Plaintiff and the Class.

75.

Defendants violated the FLSA by knowingly failing to compensate Plaintiff and the Class at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1).

76.

Defendants' actions were willful.

77.

Defendants are therefore liable to Plaintiff and the Class under 29 U.S.C. § 216(b) of the FLSA, for their unpaid wages and unpaid overtime compensation, plus an additional equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT V

### Quantum Meruit Against Defendant N&J Express

78.

Plaintiff incorporates by reference all preceding paragraphs.

79.

Plaintiff and the Class have been deprived by N&J Express of the fair value of their services and the reimbursement of their work-related expenses and are thus entitled to recovery in quantum meruit pursuant to Georgia law.

## COUNT VI

### Unjust Enrichment Against All Defendants

80.

Plaintiff incorporates by reference all preceding paragraphs.

81.

Defendants received and benefited from the uncompensated labors of Plaintiff and the Class and the costs advances by Plaintiff and the Class on N&J Express's behalf, and for Defendants to retain these benefits without compensation and reimbursement would be inequitable and would rise to the level of unjust enrichment.

82.

Plaintiffs and the Class have a reasonable expectation that they will be paid all amounts to which they are entitled by federal and state law.

83.

Defendants carefully track all compensation paid to Plaintiff and the Class as a measure of profit calculation. Deductions and underpayment of wages and other benefits of employment to Plaintiff and the Class directly increase N&J Express's profit.

84.

At all relevant times hereto, Defendants carefully devised and implemented an illegal plan to increase N&J Express's earnings and profits by fostering an illegal scheme of securing uncompensated work from Plaintiff and the Class.

85.

Contrary to all good faith and fair dealing, Defendants instructed and encouraged its managers and supervisors to induce Plaintiff and the Class to perform the work and deduct the fees alleged in this Complaint, for which just compensation and benefits required by law have not been paid.

86.

By underpaying Plaintiff and the Class, Defendants have been unjustly enriched.  Defendant N&J Express has enjoyed reduced overhead and has therefore realized additional earnings and profits for Defendants' benefit and to the detriment of Plaintiff and the Class.

87.

Defendants have retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

88.

Defendants' wrongful conduct is so offensive to common values as to merit redress by way of exemplary or punitive or other damages for Plaintiff and the Class, from Defendants, in an amount to be determined.

89.

Accordingly, Plaintiff and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants pursuant to Georgia law, to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment entering the following relief:

1.      An order permitting this action to proceed as a collective action under 29 U.S.C. § 216(b);

2.      A declaration that Defendants misclassified Plaintiff and the Class as independent contractors instead of employees;

3.      Damages attributable to Defendants' statutory and common law violations as alleged herein, and statutory enhancements of damages as followed by law;

4.      A judgment in favor of Plaintiff and the Class for all penalties and liquidated damages allowed by law;

5.      An award of prejudgment and post-judgment interest to Plaintiff and the Class;

6.      An order rescinding the CMS Agreement and the N&J Express Agreement and awarding restitution to Plaintiff and the Class for the reasonable value of their services provided to N&J Express;

7.      An award of attorneys' fees and costs as provided by law; and

8.      Such further other and further relief as the Court finds just and proper

in this action.

PLAINTIFFS DEMAND A TRIAL BY JURY.

Respectfully submitted this 24th day of June, 2010.


                                    */s/ C. Andrew Head*
                                    C. Andrew Head
                                    Georgia Bar No. 341472
                                    Attorneys for Plaintiff
                                    CROWLEY CLARIDA & HEAD LLP
                                    Suite 500
                                    900 Circle 75 Parkway
                                    Atlanta, Georgia 30339-3099
                                    (678)888-0036
                                    Email: ahead@cchlawfirm.com